**Affirmed and Memorandum Opinion filed February 5, 2019.**



In the

# Fourteenth Court of Appeals

## NO. 14-18-00709-CV

## IN THE INTEREST OF J.S., A CHILD

**On Appeal from the 313th District Court
Harris County, Texas
Trial Court Cause No. 2017-03057J**

## M E M O R A N D U M   O P I N I O N

The issues in this case involve whether the trial court's findings to terminate a mother's parental rights are supported by legally- and factually-sufficient evidence. This accelerated appeal arises from a final order in which, after a bench trial, the trial court terminated the parental rights of A.K.T. (Mother) and D.I.S. (Father) with respect to their child, J.S. (Jude),[1] and appointed the Department of Family and Protective Services to be Jude's sole managing conservator. *See* Tex.

---

[1] To protect the minor's identity, we have not used the actual names of the child, parents, or other family members. *See* Tex. R. App. P. 9.8.

Fam. Code Ann. § 109.002(a-1).

Only Mother appeals.[2] In three issues, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings on the predicate grounds of (1) endangerment and (2) failure to comply with the Family Service Plan (FSP), and the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in Jude's best interest. *See id.* § 161.001(b)(1)(D), (E), (O), (b)(2). We affirm.

## I. BACKGROUND

### A. Pretrial proceedings

#### 1. Pretrial removal affidavit

A report alleged that Mother left Jude, who is diagnosed with Antley Bixler Syndrome and was then five-months old, home alone for approximately one hour while she went to the store on May 26, 2017. The report stated that Mother was diagnosed as bipolar, but was not receiving medical care or taking medication. The report further stated that Mother admitted recent marijuana usage (within the same month).

That same day, in an interview with a caseworker, Mother stated that "at 1:50–2:40AM she decided to walk to the store because she had a headache and stomachache." Mother told the caseworker that "she occasionally smokes marijuana, and the last time she smoked was May 2017." Mother also told the caseworker that "she is diagnosed with bi polar [sic] disorder, and she isn't taking medication, []or receiving mental health care." Mother's godmother told the

---

[2] The trial court terminated Father's parental rights based on the predicate ground of his execution of an irrevocable affidavit of voluntary relinquishment of parental rights to the Department signed in May 2018. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(K).

2

caseworker that she arrived home early from work to their shared apartment at 2:20 a.m. and found Jude unsupervised. Mother's godmother told the caseworker that Mother did not return until 3:00 a.m.

The caseworker also spoke to Mother's maternal cousin. Mother and Mother's cousin agreed to a safety placement whereby the cousin was responsible for supervising the contact between Mother and Jude at the cousin's home without overnight visits. On May 28, 2017, at about 11:00 p.m., however, Mother's cousin notified the caseworker that Mother had taken Jude from the cousin's home to the home of Father and Father's mother. The caseworker told Mother to immediately return to her cousin's home with Jude.

On May 29, 2017, a "CPS Investigator" confirmed that Jude "was back with [Mother's] godmother." However, on May 30, Mother's godmother could not adjust her work schedule to monitor Mother and Jude. The caseworker spoke with Father as a potential caregiver. Father was supported by and was living with his mother, Jude's paternal grandmother. The caseworker "confirmed that the grandmother has prior CPS history for physical abuse from 2012 and 2013."

On May 31, 2017, the Department requested to be named temporary managing conservator of Jude on an emergency basis because of immediate danger to Jude's health or safety. The trial court signed an order for protection of a child in an emergency.

## 2. Family service plan

On June 14, 2017, the trial court held a full adversary hearing and signed a temporary order, finding: there was a continuing danger to Jude; for Jude to remain in the parents' care was contrary to Jude's welfare; and despite reasonable efforts made by the Department to avoid removing Jude, allowing Jude to reside in the

3

parents' care was not in Jude's best interest. The trial court appointed the Department as Jude's temporary managing conservator.

The trial court held a status hearing on July 25, 2017, and signed an order requiring Mother to comply with an FSP. The FSP required Mother to complete the following tasks and services:

- participate in a psychological evaluation, provide honest and accurate information, and follow all recommendations;
- participate in a psychiatric evaluation, provide honest and accurate information, and follow all recommendations;
- participate in a substance-abuse assessment, provide honest and accurate information, and follow all recommendations;
- provide random drug screenings with the understanding that not showing up for testing will be considered a positive result;
- participate in a six- to eight-week parenting class geared toward children under the age of one year;
- maintain safe and stable housing;
- attend all court hearings, permanency conferences, and family visits; and
- gain and maintain regular employment and provide proof in the form of paycheck stubs.

## B. Trial

### 1. Orders and documentary evidence

At the beginning of trial, the Department requested that the trial court take judicial notice of the orders in the file. The trial court did so. The Department also introduced pertinent documentary evidence in the forms of Texas Department of State Health Services records, drug-screening records, and the FSP. Mother did not object to any of the Department's exhibits, and the trial court admitted them.

4

Mother's drug-screening records[3] reflected:

- on June 14, 2017, Mother's hair sample tested positive for marijuana and marijuana metabolites, and her substance-abuse panel tested positive for marijuana metabolites;

- on July 25, 2017, Mother refused to provide court-ordered hair and urine samples for drug screening, which was considered a positive test; and

- on November 7, 2017, Mother refused to provide a court-ordered hair sample for drug screening, which was considered a positive test, and her substance-abuse panel tested positive for marijuana metabolites.

## 2. Caseworker

The caseworker assigned to Jude testified that Jude has been diagnosed with Antley Bixler Syndrome, a recessive genetic condition.[4]  Jude, now one-year old, has a soft spot on the front part of the skull and has undergone several surgeries to correct it.  Jude is developmentally delayed and sees several specialists (respiratory, neurological, and urological) and therapists (occupational, feeding, physical, and speech).  Jude is not able to swallow and "just spits the food back out."  Jude currently has a breathing tube and collar to assist his breathing.  This tube needs to be properly suctioned to remove Jude's secretions and prevent bacterial infections.  Jude may require the breathing tube indefinitely.  Jude "is a highly specialized, medically fragile child."  Jude needs constant care from a parent or caregiver.

---

[3] The drug-screening records indicate that samples can be tested not only for marijuana, but also for amphetamines, barbiturates, benzodiazepines, cocaine, methadone, methaqualone, opiates, oxycodones, phencyclidine, propoxyphene, ethyl alcohol, meperidine, and tramadol.

[4] The Department did not present any expert medical testimony.  Mother neither raised objections to any evidence presented by the Department, nor otherwise made a request, objection, or motion, or received a ruling, to preserve a complaint for appellate review.  *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a).  However, in this civil nonjury case, Mother can challenge legal and factual sufficiency for the first time on appeal.  *See* Tex. R. App. P. 33.1(d); *see also* Tex. R. Civ. P. 324(a).

The caseworker testified that Jude "c[a]me into care" because a referral was called on the Mother for leaving the then five-month-old home alone at 2:00 a.m. for an hour to go to the store and "get some BC powder." According to the caseworker, Mother's choice to leave her child with "all of these special needs" home alone in the middle of the night for over an hour placed Jude's life in danger.

Regarding the FSP, the caseworker stated that the FSP in this case covered a child with special needs and was not "just a basic family plan." The caseworker explained to Mother all the services being requested of her so that her special-needs child could be returned to her care. The caseworker testified that Mother underwent the psychological evaluation, which did not indicate any bipolar concerns. However, Mother did not complete the recommended eight sessions of individual therapy. Nor had Mother undergone the psychiatric evaluation or the substance-abuse assessment required by the FSP.

The caseworker testified that Mother tested positive for drugs (marijuana) at the beginning of the case and did not complete the service required by the FSP to submit to random drug screening. At the time, Mother had submitted to "none" of the drug screenings requested by the Department. After the initial June 2017 court order, Mother refused to submit to court-ordered drug testing. When asked what the effect of drug use was on Jude's well-being, the caseworker testified that Mother "wouldn't be able to care for [Jude] properly if she was under the influence."

The caseworker testified that Mother did not complete the parenting classes required by the FSP. Mother did not complete the set of classes she started because of Hurricane Harvey and transportation issues. The caseworker agreed that Mother could have completed the parenting classes after Jude's removal and prior to Harvey. Mother now was attending another set of classes. Mother did not maintain safe and stable housing because she has moved several times within the past two months.

6

Mother attended all family visits and only missed one court hearing. Mother did not complete the service required by the FSP to gain and maintain regular employment and provide proof in the form of paycheck stubs.

During the caseworker's testimony, Mother walked out of the courtroom. The trial court stated on the record: "The mother has left the courtroom, and my bailiffs have had to follow her around. She's causing a disturbance in the hall right now."

Regarding Jude's best interest, the caseworker testified that the Department considered possible relative placement with the maternal great aunt, but the aunt admitted she has a criminal history. Also, the paternal grandfather was unable to take Jude. The caseworker testified that Jude was currently in a foster home, under constant care, and has been thriving and receiving all necessary services. The long-range goal for Jude was unrelated adoption, possibly with the current foster mother, who was providing Jude with the "love and stability [Jude] needs." The caseworker testified that Mother has not demonstrated she has the parental abilities to meet the physical and emotional needs of Jude and that reunification would not be in the best interest of Jude.

### 3. Child advocate

The court-appointed child advocate testified in support of the Department's request to terminate Mother's parental rights. The advocate's concerns include that Mother is young and immature, has "a lot of instability," and does not have "the support" to care for the medically fragile child. Mother also did not "do her part" under the FSP to reunify with Jude.

The advocate also discussed Mother's behavior in the hallway outside the courtroom. He described her behavior as erratic. Mother screamed, cursed, and made "physical threats toward her mother and other people." The advocate stated

7

that Mother's behavior concerned him "very much." He was concerned about her "stability," "mental ability," and "level of immaturity" to be able to care for Jude.

### 4. Mother

Mother testified[5] and acknowledged that she left Jude "home alone at 2:20 in the morning to go get some BC Headache Powder." Mother agreed that Jude was "medically fragile," has a breathing tube, "couldn't cry at the time," and "couldn't ask for help if [Jude] needed it." Mother admitted that she smoked marijuana at the beginning of the case. Although Mother denied continuing to smoke marijuana, she admitted that she tested positive "as late as the last 60 days." Mother agreed that a child with serious medical needs should have a parent who was sober all the time. Mother agreed that leaving Jude home alone without anyone to care for him places Jude in danger. Mother also agreed that choosing to use marijuana places Jude in danger. Mother acknowledged that she did not complete all the services required by the FSP, including the "[s]ubstance abuse [assessment] and counseling." Mother testified that she started working at Party City on June 18 and was staying with her godmother in an efficiency apartment. Mother does not currently have a crib, stroller, or baby seat. Mother stated that she visited Jude multiple times and she has a bond with Jude. Mother regretted leaving Jude alone. Mother acknowledged that Jude requires constant care and currently "has 24/7 nursing services." Mother stated that she completed parenting classes and underwent psychiatric and psychological evaluations. Mother denied that she was bipolar and acknowledged that she did not participate in any of the recommended individual counseling sessions. Mother stated she understood why the Department had concerns that she did not complete the substance-abuse assessment.

---

[5] Trial began in May 2018. Mother did not testify until the bench trial resumed in July 2018.

### 5. Child advocate

The child advocate retook the stand and continued to recommend termination of Mother's parental rights. The advocate observed something that concerned him during one of Mother's recent visits. He asked the caseworker who was observing the visit whether Jude's parents were "going for a drug test because they smelt of— they had the distinct odor of marijuana." The parents were instructed to take a drug test, but they did not report for testing even though "literally, it was right around the corner from the visit." The advocate explained: "If she's testing positive for marijuana and would happen to have the child around her, we are concerned about the level of parenting and the protective capabilities because they are inhibited once you start to become under the influence."

According to the advocate, "[t]his is a case that's more than just marijuana." The advocate reiterated that Jude requires "24/7" care and that his case is "more than special needs." Even one missed visit to a doctor, specialist, or therapist "could be detrimental to the welfare of [Jude]." The advocate highlighted the importance of engaging in individual counseling sessions to better recognize Jude's special needs, which Mother did not do. The advocate remained concerned about Mother's maturity level and lack of a support system. The advocate expressed his concern that he had not been able to review the housing in which Mother proposed to place Jude "[b]ecause it has changed multiple times." Because he was unable to see or verify her housing, the advocate could not register a residence for Mother. The advocate continued to believe that termination was in Jude's best interest.

### 6. Caseworker

The caseworker retook the stand and described how a social worker pulled her aside during a healthcare meeting to inform her that Mother "smelt like marijuana." The caseworker stated that she was concerned about Mother's refusal to take drug

9

tests and her excuses: "And every time I asked her after why she didn't go, she always said the father's family wouldn't take her." While Mother did recently report for a drug test in June 2018, she refused to provide a hair sample and her urine sample tested positive. The caseworker testified that the Department had a long-term permanent placement available for Jude because the foster mother wanted to adopt.

After closing statements, Mother left the courtroom. Before making its findings, the trial court stated that it had reset Mother's case "a number of times" to give her "an opportunity to show the Court that she would be able to take care of the child, given the child's extensive medical needs." The trial court found the Department met its burden by clear and convincing evidence to show that termination of Mother's rights was warranted under Family Code section 161.001(b)(1)(D), (E), and (O). The trial court also found that termination was in Jude's best interest.

## II. ANALYSIS

In her first two issues, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings on the predicate grounds of (1) endangerment and (2) failure to comply with the FSP. In her third issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in Jude's best interest.

### A. Standards of review

Involuntary termination of parental rights is a serious matter that implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to

10

recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of terminating the parental relationship, the law in Texas requires clear and convincing evidence to support such an order. *See* Tex. Fam. Code Ann. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264.

The heightened burden of proof in termination cases results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (op. on reh'g). We review the legal sufficiency of the evidence by considering all evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.*; *In re D.R.A.*, 374 S.W.3d at 531. However, this does not compel us to disregard all evidence that does not support the finding. *In re D.R.A.*, 374 S.W.3d at 531. Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.*

In reviewing the factual sufficiency of the evidence under the clear-and-convincing burden, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of

11

the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (internal quotation marks omitted). We give due deference to the factfinder's findings and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

In a proceeding to terminate the parent-child relationship brought under Family Code section 161.001, the petitioner must establish, by clear and convincing evidence, one or more acts or omissions enumerated under subsection 1 of section 161.001(b) and that termination is in the best interest of the child under subsection 2. Tex. Fam. Code § 161.001(b); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

## B. Predicate termination grounds

The trial court made predicate termination findings that Mother had committed acts establishing the grounds set out in subsections D, E, and O of section 161.001(b)(1), which provides for termination of parental rights if the factfinder finds by clear and convincing evidence that the parent has:

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

> . . . [or]

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the

12

child[.]

Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), and (O).

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when the factfinder also finds that termination is in the child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We will address the trial court's finding of endangerment under subsection E.

"To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). A finding of endangerment under subsection E requires evidence that the endangerment was the result of the parent's conduct, including acts, omissions, or failures to act. *In re S.R.*, 452 S.W.3d at 360. Termination under subsection E must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *Id.* A trial court properly may consider actions and inactions occurring both before and after a child's birth and before and after removal to establish a course of conduct. *Id.* at 360–61. "While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffers injury; rather, the specific danger to the child's well-being may be inferred from parents' misconduct alone." *Id.* at 360 (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *Id.*

Drug abuse and its effect on the ability to parent can present an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d at 345; *see In re S.R.*, 452 S.W.3d at 361. Drug use can endanger a child "when the environment creates a potential for

13

danger that the parent is aware of but disregards." *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.). As explained by both the caseworker and the advocate at trial, being under the influence would impair Mother's ability to care for Jude and inhibit her "protective capabilities." These protective capabilities are especially vital in this "more than special needs" case where Jude has a serious ongoing medical condition requiring constant "24/7" supervision. Mother agreed that a child with "serious medical needs" deserved a sober parent and admitted that her actions in leaving Jude home alone and using marijuana endanger Jude. Although we do not consider Mother's testimony to be an admission of the predicate ground of endangerment, her testimony shows that Mother herself recognized her conduct was wrong.

The investigation in this case revealed that Mother smoked marijuana in May 2017, the same month Jude was removed from the home. In addition, Mother's hair and urine samples tested positive for marijuana in June 2017. The record reflects that Mother refused the trial court's order to provide both hair and urine samples in July 2017, which is considered a positive result. Mother refused to provide a court-ordered hair sample in November 2017, which is considered a positive result, and her urine sample tested positive for marijuana.[6] The advocate testified that when Mother reported for a visit smelling of marijuana, Mother refused to submit to testing despite the nearness of the testing facility. Mother also refused to provide a hair sample in June 2018, which is considered a positive result, and "she did test positive in her urine." Mother admitted that her urine sample tested positive for marijuana within the past two months.

---

[6] The trial court ordered Mother to report for additional drug testing in February and May 2018. The Department did not include any reports from this testing in its trial exhibits. However, at trial, the caseworker acknowledged that Mother "failed to complete [drug testing] orders given by this court every single time she came here."

Mother acknowledges in her brief that "[u]nfortunately, drugs have been an issue in this case because the Mother has not submitted to many drug tests." Nevertheless, Mother argues that "the Department lacks support for the E ground, even though the Department counts her lack of attendance as positives." Mother was aware that the Department would consider any "no show" to take a drug test "as a positive result." Nevertheless, Mother consistently refused to provide samples both when referred by the Department and when ordered by the trial court. Mother's refusal to submit to drug testing, which could have revealed not only marijuana use, but also other drug use, may be treated by the trial court as if she had tested positive for drugs. *See In re E.R.W.*, 528 S.W.3d at 265 (factfinder reasonably can infer that parent's failure to submit to drug tests indicates parent is avoiding testing because they were using drugs); *In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (same). Even without considering her multiple refusals to provide hair and urine samples as positive results, Mother's samples tested positive for marijuana three times after Jude was removed, including in June 2018, the month before Mother's trial resumed. *See In re S.R.*, 452 S.W.3d at 361–62 (continued drug use after child's removal may be considered as establishing endangering course of conduct). Mother did not challenge any of these positive laboratory test results. Further, even though there were particular concerns about Mother's continued drug usage around her medically-fragile child and she said she understood those concerns, Mother never underwent the substance-abuse assessment required by the FSP. *See id.* at 362 ("A parent's efforts to improve or enhance parenting skills are relevant in determining whether a parent's conduct results in endangerment under subsection E.").

This case is not simply about a parent using marijuana. This case is about a parent making a dangerous choice—to be impaired and unable to provide proper

15

care to a medically-fragile child. Considered in the light most favorable to the trial court's finding, we conclude that the evidence is legally sufficient to support the trial court's termination of Mother's parental rights under section 161.001(b)(1)(E) under these circumstances. Likewise, viewing the entire record, we conclude any disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(E). Accordingly, we conclude that the evidence is factually sufficient to support the subsection E predicate finding.

In light of this conclusion, we need not address the trial court's findings on subsections D and O. *See In re A.V.*, 113 S.W.3d at 362. We overrule Mother's first two issues.[7]

## C. Best interest of Jude

In her third issue, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in Jude's best interest. There is a strong presumption that the best interest of a child is served by keeping the child with the child's natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Tex. Fam. Code § 153.131(b)); *In re D.R.A.*, 374 S.W.3d at 533. However, prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *In re S.R.*,

---

[7] Within her "Statement of Facts" section, Mother alleges: "By not holding the State to its burden of proof, the court has deprived Mother of her Due Process rights by improperly terminating her parental rights. This indeed is reversible error." To the extent Mother raises a constitutional due-process issue on appeal, the record reflects she did not raise such issue in the trial court. Therefore, any due-process complaint by Mother is waived. *See* Tex. R. App. P. 33.1(a); *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003). Also, within her "Statement of Facts," Mother alleges that the trial court deprived Jude of Jude's due-process rights "because of this wrongful termination." Assuming solely for the sake of argument that Mother has any standing to bring this issue, this issue also was not raised below and is waived. *See* Tex. R. App. P. 33.1(a); *In re L.M.I.*, 119 S.W.3d at 710–11.

452 S.W.3d at 366 (citing Tex. Fam. Code § 263.307(a)). Proof of acts or omissions under section 161.001(b)(1) is probative of the issue of the child's best interest. *See id.* The considerations that the factfinder may use to determine the best interest of the child, known as the *Holley* factors, include:

(1) the desires of the child;

(2) the present and future physical and emotional needs of the child;

(3) the present and future physical and emotional danger to the child;

(4) the parental abilities of the person seeking custody;

(5) the programs available to assist the person seeking custody in promoting the best interest of the child;

(6) the plans for the child by the individuals or agency seeking custody;

(7) the stability of the home or proposed placement;

(8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and

(9) any excuse for the parent's acts or omissions.

*See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re S.R.*, 452 S.W.3d at 366; *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to be considered in evaluating "whether the child's parents are willing and able to provide the child with a safe environment"). A best-interest finding does not require proof of any unique set of factors, nor does it limit proof to any specific factors. *See Holley*, 544 S.W.2d at 371–72; *In re S.R.*, 452 S.W.3d at 366.

### 1. The desires of Jude

Jude was removed at the age of six months and was only twenty-months old at the start of trial. When a child is too young to express his desires, the factfinder may consider that the child has bonded with the foster parent, is well cared for by the foster parent, and has spent minimal time with a parent. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The caseworker

testified that the foster mother provides Jude with love, safety, and stability. Jude is thriving. While in foster care, Jude is active and has started babbling. Jude recently took his first steps with the aid of a medical "stance" or support.

Mother argues that she is bonded with Jude. The caseworker agreed that Mother seems bonded with Jude and Jude seems bonded with her during Mother's visits. However, the caseworker acknowledged that "[r]ecogni[tion] or bonding with a child with so many special needs is really not enough for reunification." *See In re C.G.*, No. 14-18-00412-CV, 2018 WL 4702403, at *5–6 (Tex. App.—Houston [14th Dist.] Oct. 2, 2018, no pet. h.) (mem. op.) (rejecting best-interest challenge of mother who raised bonding argument). The trial court reasonably could have weighed this factor in favor of termination.

## 2. Present and future physical and emotional needs of Jude

"Regarding this factor, we note that the need for permanence is a paramount consideration for the child's present and future physical and emotional needs." *In re D.R.A.*, 374 S.W.3d at 533. Establishing a stable, permanent home for a child is a compelling government interest. *Id.* The record reflects that Jude has serious medical and extraordinary physical needs requiring constant care and multiple, ongoing, specialist visits and therapy. These extraordinary needs are presently being met by the foster mother in a loving, stable environment.

Mother argues that "it remains speculative" whether the foster mother will meet Jude's future physical and emotional needs. That Jude is currently thriving is evidence that the foster mother can meet the future needs. *See In re C.G.*, 2018 WL 4702403, at *5–6 (rejecting best-interest challenge of mother who raised speculation argument). In addition, the record reflects that Mother used drugs while Jude was in her care, continued to use drugs even after her child was removed, and lacked stable housing. A young toddler with serious medical needs and a breathing tube

particularly needs a stable home and a sober parent with "protective capabilities." A factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness to meet the child's needs in the future. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The trial court reasonably could have weighed this factor in favor of termination.

### 3. Present and future physical and emotional danger to Jude

With regard to this factor, we note that Mother continued inappropriate conduct while the termination case was pending, that is, her activities involving drugs, subjecting her child with serious medical needs to an uncertain future that endangered Jude's safety and stability. *See In re J.O.A.*, 283 S.W.3d at 345; *In re S.R.*, 452 S.W.3d at 361–62. Continued drug use not only may be considered as establishing an endangering course of conduct, but also that termination is in the child's best interest. *In re B.Z.S.*, No. 14-16-00825-CV, 2017 WL 536671, at *5 (Tex. App.—Houston [14th Dist.] Feb. 9, 2017, pet. denied) (mem. op.). The record also reflected that Mother's housing situation was not stable. Evidence of a parent's unstable lifestyle also can support the conclusion that termination is in the child's best interest. *In re A.R.M.*, No. 14-13-01039-CV, 2014 WL 1390285, at *10 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.) (mem. op.).

Mother argues that "it remains speculative" whether the foster placement will continue to remain safe and stable. The foster mother up to this point has provided love and stability for Jude. Moreover, she has expressed her desire to permanently adopt Jude. The trial court reasonably could have weighed this factor in favor of termination.

**4. Parental abilities of those seeking custody, stability of the home or proposed placement, and plans for Jude by the individuals or agency seeking custody**

These related factors compare the Department's plans and proposed placement of Jude with the plans and home of the parent seeking to avoid termination of the parent-child relationship. *See In re D.R.A.*, 374 S.W.3d at 535.

We consider, under the facts of this case, Jude's particular "physical and mental vulnerabilities." *See* Tex. Fam. Code § 263.307(b)(1), (12); *In re I.L.G.*, 531 S.W.3d 346, 355 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Mother left her infant with serious medical needs home alone in the middle of the night because she had a headache. Mother continued to use drugs and did not maintain stable housing after Jude was removed from her care. Despite her professed understanding that her drug use was not appropriate care of Jude, Mother did not complete pertinent services required by the FSP, including the substance-abuse assessment, random drug testing, and recommended individual counseling. Mother did not comply with court-ordered drug testing and failed to maintain stable housing. Both the caseworker and the advocate expressed their concerns about Mother's parental abilities and lack of stability. *See In re C.G.*, 2018 WL 4702403, at *6 ("The fact finder may consider a parent's parenting skills in a best-interest analysis."). The caseworker also expressed her concern that Mother "has not developed a plan for how she is going to care for [Jude]."

The foster mother is providing Jude with a safe and stable home environment. Despite Jude's serious medical condition, Jude is thriving and making developmental progress. The Department's long-term permanent placement plan is for the foster mom to adopt Jude. *See In re C.H.*, 89 S.W.3d at 28 (evidence about placement plans and adoption is relevant to best interest).

20

Mother acknowledges that the current foster placement "is reportedly safe, stable, protective and meeting all of the child's needs" and that Mother needs "additional services to address her parenting deficiencies," but maintains that she wants Jude back. Comparing the Department's plans and proposed placement with the (lack of) plans and unstable home of Mother, the trial court reasonably could have weighed these factors in favor of termination.

### 5. Programs available to assist in promoting Jude's best interest

In determining the best interest of the child in termination proceedings, the trial court may properly consider that the parent did not comply with the court-ordered FSP for reunification with the child. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *In re I.L.G.*, 531 S.W.3d at 355. The caseworker testified that Mother failed to complete her FSP. Although there is evidence that Mother completed some services, Mother did not provide unadulterated random drug screenings, participate in a substance-abuse assessment, attend individual counseling, or maintain safe and stable housing. The trial court stated that it gave Mother additional time in the case hoping she could demonstrate the ability to care for Jude. Mother's failure to complete the court-ordered FSP demonstrates that she is unwilling to take advantage of the services offered to her by the Department and casts doubt on her parenting abilities. *See* Tex. Fam. Code § 263.307(b)(10), (11); *In re I.L.G.*, 531 S.W.3d at 356. The trial court reasonably could have weighed this factor in favor of termination.

### 6. Acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate, and any excuse for the parent's acts or omissions

Mother regrets leaving Jude alone at home and argues that she is willing to do whatever is needed to demonstrate that she can meet Jude's physical and emotional

needs. However, as noted above, Mother continued to use marijuana throughout the termination proceedings. Mother admitted using marijuana without offering any excuse for her conduct—conduct that she admitted was not proper care of Jude. Mother placed much of the blame for her failure to complete the FSP on others. For example, Mother blamed the father's family for not taking her for drug testing. But Mother did not submit to testing even when she was "right around the corner." Although almost a year had elapsed since the trial court adopted the FSP, Mother blamed service providers for scheduling issues. Mother's continued pattern of irresponsible conduct reflects that termination is in Jude's best interest. The trial court reasonably could have weighed these factors in favor of termination.

Under all the circumstances in this case, and applying the applicable *Holley* factors to all the evidence, we conclude that legally- and factually-sufficient evidence supports the trial court's finding that termination of Mother's parental rights is in Jude's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2).

We overrule Mother's third issue.

### III. CONCLUSION

Having concluded that the evidence is legally and factually sufficient to support the trial court's finding terminating Mother's parental rights under section 161.001(b)(1)(E) and the finding that termination is in Jude's best interest, we affirm the trial court's final order.


/s/    Charles A. Spain
Justice


Panel consists of Justices Wise, Zimmerer, and Spain.

22